# MURRAY v. ST. LOUIS TRANSIT COMPANY, Appellant.

### Division One, June 20, 1903.

1. **Negligence:** SOUNDING GONG: NEGATIVE EVIDENCE. The averment that defendant was guilty of negligence in not sounding the gong on its street car as it approached a street crossing, is the statement of a negative, and the proof to sustain it must necessarily be of a negative character.   Ordinarily that can be done only by witnesses who were in a position to hear and who gave attention to hear, but who did not hear it.

2. ———: ———: PURPOSE: ACTUALLY SEEING: FAILURE SHOWN BY DEFENDANT. The only purpose of sounding the gong on a street car is to attract attention and give warning that the car is approaching, and if the injured person in fact saw the close-by car coming, the failure of the motorman to sound the gong can have no place in the case.   Nor can plaintiff go to the jury on the theory established by defendant's testimony that he did not ring the gong, for that would impeach his own testimony that he did see the car. So that where defendant's testimony is that a van wagon got on the track in front of the car and between it and plaintiff, and remained there until the car was within thirty-five feet of the crossing, which made it impossible for plaintiff to see the motorman or the motorman to see plaintiff, and then the car was too close to plaintiff to be stopped in time to avoid striking him, the sounding of the gong may have given plaintiff warning, but he can not go to the jury on that theory, because to permit him to do so would be to impeach his own testimony that he had seen the car approaching.

3. ———: LOOKING AND LISTENING. Where the facts surrounding the accident show that it was plaintiff's obvious duty to look and listen before crossing a street car track, and defendant's evidence indicates that if he had looked or listened he could, by the exercise of ordinary care, have avoided the accident, an instruction telling the jury that if he neither looked nor listened, he could not recover in spite of the fact that defendant's servants were guilty of some negligence which contributed to his injury, is proper.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer,* Judge.

REVERSED AND REMANDED.

*Boyle, Priest & Lehmann, Walter H. Saunders* and *Lon. O. Hocker* for appellant.

(1)　The court erred in submitting to the jury, in the instructions given of its own motion, the question of defendant's liability in failing to sound its gong, as there was no legal evidence of such failure. The only interpretation which can be placed upon the testimony respecting the gong, given by all of plaintiff's witnesses, is that they were not paying any attention to it. Such testimony does not make out a case of negligence, the presumption being that the defendant exercised proper care. Cathcart v. Railroad, 19 Mo. App. 118; Summerville v. Railroad, 29 Mo. App. 48. (2) The court erred in refusing defendant's instructions 2 and 3, which stated to the jury the plaintiff's obligation to look and listen, and in giving one of its own motion, exacting of him only ordinary care generally. Zimmermann v. Railroad, 71 Mo. 490.

*George E. Smith* for respondent.

VALLIANT, J.—Plaintiff recovered a judgment for $500 damages for personal injuries received by him in a collision with one of defendant's street cars, caused, as he alleges, by the negligence of defendant's servants. Defendant appeals from the judgment, and as the ap-

peal was taken before this court had passed on the question of the validity of the constitutional amendment authorizing nine jurors in a civil case to return a verdict, and as that question was raised in the trial court in this case, the appeal was brought to this court. Since the appeal in this case was taken, however, that constitutional question has been decided by this court and it is no longer in doubt. [Gabbert v. Railroad, 171 Mo. 84.]

The petition charges the following acts of negligence:

The servants in charge of the car were inexperienced and unskillful;

They were running the car at an unlawful and reckless speed;

The motorman in charge saw the plaintiff crossing the track in ample time to have averted the accident but neglected to do so;

The motorman neglected to ring his gong.

The answer was a general denial, and a plea that plaintiff was guilty of negligence contributing to the accident in that he drove on defendant's track without looking or listening and in such close proximity to the moving car as to prevent those in charge of it from stopping in time to prevent the collision.

The plaintiff's evidence tended to prove as follows:

Montgomery street runs east and west crossing Ninth street at right angles. In the afternoon of August 17, 1900, plaintiff, a man fifty-nine years of age, was driving a one-horse wagon going west on Montgomery street. It was a covered wagon with curtains at the sides, but the curtains were rolled up and the driver could see to the front and on both sides. Defendant owns a single track street railroad on Ninth street, the cars over which pass only in one direction, north. As the plaintiff, driving, approached defendant's tracks when his horse's head was six or seven feet east of the east rail he looked to the south and saw

a car approaching about half a block distant, and judg-
ing that he would have sufficient time to cross, drove
on slowly, but before he got across the car struck the
wagon, overturned it, and threw him out, inflicting in-
juries. Neither the plaintiff nor any of his witnesses
heard a gong ring.

The defendant's evidence tended to prove as fol-
lows:

When the car going north had passed about fifty
feet north of Warren street, which is the next street
south of Montgomery, its movement was impeded by a
large furniture wagon on the track going slowly in the
same direction. The motorman rang his bell to signal
the driver of the furniture wagon to get off the track
and when that wagon was about twenty feet from the
south line of Montgomery street it moved off the track
to the right; the car was then about fifteen feet behind
it or about thirty-five feet from the south line of Mont-
gomery street. The motorman did not see the plain-
tiff's wagon until the furniture wagon had cleared the
track; then the plaintiff's wagon was within ten feet
of the track. As soon as the motorman saw the plain-
tiff's wagon he applied his brake, reversed his motor
and tried to stop the car, but it was too late. The car
struck the wagon and turned it over but did not in-
jure it, and stopped in the intersection of the two streets,
three or four feet south of the north line of Montgomery
street.

The court of its own motion gave the jury the fol-
lowing instruction:

"If from the evidence you find and believe that on
August 17, 1900, the plaintiff was thrown out of the
wagon which he was driving and was injured by reason
of one of defendant's cars striking said wagon at a
public crossing in this city, and that the plaintiff in ap-
proaching the track and thereafter exercised reasona-
ble care for his own protection and that the defendant's
servants in charge of said car either ran said car at a

rate of speed which was negligent on their part, as hereinafter explained, or that they negligently failed to give any warning of the approach of the car, or that they negligently failed to stop the car in time to avoid the accident after they saw the plaintiff crossing the track, and that one or more of such negligent acts of defendant's servants (if you believe they were negligent) was the direct and proximate cause of plaintiff's injury, then your verdict should be for the plaintiff.

"The burden of proving that the defendant was guilty of any one or more of the acts of negligence hereinabove referred to, and that such negligence was the direct and proximate cause of the plaintiff's injury, is upon the plaintiff, that is, he must establish the truth thereof by a preponderance, or greater weight, of the evidence.

"Negligence is the absence of ordinary care. Ordinary care is that degree of care which a person of ordinary prudence would under the same or similar circumstances exercise. Applying these definitions to this case, the defendant was required to use such ordinary care in regulating the rate of speed of its car, in giving warning of the approach of the car and in stopping the car after the plaintiff was seen by them to be in peril. If, on the other hand, you believe that the plaintiff failed to exercise ordinary care for his own protection, and that such failure on his part was either the direct and proximate cause of his injury, or that without such failure to exercise ordinary care on his part, the injury to himself would not have occurred even though defendant's servants were negligent as herein explained, then your verdict should be for the defendant.

"The burden of proving any such negligence on the part of the plaintiff and that such negligence contributed to the plaintiff's injury, as hereinbefore explained, is upon the defendant, that is, they must establish the truth thereof by a preponderance or greater weight of the evidence.

"If your verdict is for the plaintiff, you will assess his damages at such a sum, as, from the evidence, will fairly and reasonably compensate him for any injury, to head, legs or body, pain or suffering, loss of time and expense, he has suffered or incurred by reason of his injury, and if you believe, from the evidence, he will be wholly or partially disabled from earning a livelihood by reason of the injury, you may consider that fact in determining the amount of his damage.

"If your verdict is for the defendant you will simply so state in your verdict."

That was the only instruction given.

Defendant asked several instructions, all of which were refused, among them the following, the refusal of which defendant assigns as error:

"2.    You are further instructed that it was the duty of plaintiff, before attempting to cross defendant's track, to both look and listen for an approaching car, and if you find that by looking or listening the plaintiff would have seen or heard defendant's car in time to have avoided collision with it, then the plaintiff can not recover and your verdict must be for defendant.

"3.    The court instructs the jury that even though they should find that the defendant had been guilty of some one or more of the acts of negligence stated in a former instruction, nevertheless plaintiff is not entitled to recover if they also find from the evidence that by looking or listening he might have seen or heard the approach of defendant's car in time, by the exercise of ordinary care on his part, to have avoided collision with it."

Exceptions to the giving and refusing of the instructions were duly preserved.

I.    Appellant's first point is that the court erred in submitting to the jury the question of defendant's negligence in failing to sound its gong because, appellant says, there was no evidence to sustain that allegation.

The averment in the petition that the gong was not sounded is the statement of a negative and the proof to sustain it must necessarily be of the same character. Ordinarily the only means of proving that a gong was not sounded, is by witnesses who were in position to have heard it if it had been sounded and who testify that they did not hear it; the conclusion from such evidence is only inferential. Such testimony when given by intelligent and honest witnesses is accorded more or less probative effect according to the attention the witnesses were paying. But the testimony of even a casual bystander whose attention was not especially drawn to the subject, but who nevertheless was near enough to have heard, yet did not hear, is some evidence that the gong did not sound. We can not agree with appellant, therefore, that there was no evidence of that kind in the case.

The neglect, however, of the motorman to sound the gong, if he did neglect to sound it, can not have any influence in this case unless the plaintiff abandons his own evidence and seeks to recover on the conditions shown in the defendant's testimony.

The plaintiff testified, and repeated the statement several times, that he distinctly saw the car coming towards the crossing. The only purpose in sounding the gong is to attract attention and give warning that the car is approaching. But if one sees the car coming what advantage will the sounding of the gong be to him?

Under the conditions, however, which the defendant's evidence tended to prove, it was the duty of the motorman to sound the gong, because under that evidence the fact appears that the furniture wagon shut off the plaintiff's view and he could not see the car until that wagon had moved off the track to the right (which was the same side the plaintiff was on), and plaintiff had passed in front of it and got within a few feet of the track. If, therefore, the plaintiff had not seen the car a half block away as he says he did, and did not see

it until he had passed into dangerous proximity to it, in that condition, if the gong had been sounded it might have given him warning which he might have heeded.

But the plaintiff was not entitled to go to the jury on that theory because it impeaches his own testimony and is contrary to the theory on which he tried his case. The court erred in submitting the issue to the jury.

II.   The two instructions refused, of the refusal of which defendant now complains, were to the effect that it was the duty of the plaintiff before going on the track to look and listen for the approaching car and if by looking or listening he would have seen or heard the car in time to have avoided the accident by the exercise of ordinary care, but neglected to do so, then notwithstanding the defendant might also have been guilty of negligence contributing to the accident · the plaintiff could not recover.

Those instructions correctly stated the law bearing on those points in the case under the circumstances which the defendant's evidence tended to prove, and the defendant was entitled to them.

If the defendant's evidence is to be believed the inference may be fairly drawn from it that the plaintiff attempted to cross the railroad track without either looking or listening, and that if he had looked after he had passed in front of the furniture wagon he would have seen the car in time to have stopped before it reached him, and that if he had listened, even while the furniture wagon obstructed his view, he would have heard the gong which the motorman was sounding to warn the driver of the furniture wagon to get off the track.   According to this evidence, when the plaintiff came in view, after crossing in front of the furniture wagon, his horse was six or seven feet from the east rail of the track.   It was then that the motorman began to apply his brake and reverse his motor and if the plaintiff had been as watchful as the motorman was, he would have at least tried to stop his horse before

he went on the track. The fact that when the car struck the wagon it did not break it, but only turned it over, and, the car itself stopped before it reached the north crossing, shows that it was at the instant of the collision going very slowly and sustains the idea that if the plaintiff had been on the lookout he could have avoided the accident. What is here said is assuming (as, for the question of the propriety of these instructions, we should assume) that the defendant's evidence is true.

The court doubtless considered that it had sufficiently covered that point when it instructed the jury that it was the duty of the plaintiff to have used ordinary care for his own safety in attempting to cross the track and defined the term "ordinary care." A party, however, has not only the right to have the general principle of law applicable to the case declared, but he is also entitled to have the court instruct the jury that the performance of specific acts devolves as a duty on the party when, as on the theory of the defendant's evidence in this case, those acts are so obviously a duty that there can be no question of fact about it. [Zimmerman v. Railroad, 71 Mo. 476.]

The learned circuit judge in the instructions given recognized the propriety of pointing out certain acts as constituting a duty demanded by the law of the defendant. After laying down the general principle and defining ordinary care, the instruction continues: "Applying these definitions to this case the defendant was required to use such ordinary care in regard to the rate of speed of its cars, in giving warning of the approach of the car and in stopping the car after the plaintiff was seen by them to be in peril."

The fact that the plaintiff attempted to cross the track without looking or listening was specifically stated in the answer and was an issue in the case.

The court erred in refusing those instructions.

The judgment is reversed and the cause remanded to be retried according to the law as herein declared.

All concur.